IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

SEP 2 2 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| CHOOSE LIFE ILLINOIS, INC.,<br>et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 4316 |
| | ) | |
| JESSE WHITE, Secretary of State,<br>State of Illinois, | ) | Judge Coar |
| | ) | |
| Defendants. | ) | |

### NOTICE OF MOTION

**DOCKETED**

OCT 0 8 2004

TO:  Thomas Brejcha
     Thomas More Society
     29 S. LaSalle, Suite 440
     Chicago, Illinois 60603

PLEASE TAKE NOTICE that on October 7, 2004, at 9:00 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Coar, or whomever may be sitting in his stead, Room 1419, in the United States District Court, Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois 60604, and then and there present the attached MOTION TO DISMISS and MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, a copy of which is herewith served upon you.

LISA MADIGAN
Attorney General of Illinois

Thomas G. Ioppolo

THOMAS A. IOPPOLO
Assistant Attorney General
General Law Bureau
100 West Randolph St., 13th floor
Chicago, Illinois 60601
312/814-7198

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served upon the above named at the address indicated by first class mail, postage prepaid on the 22nd day of September, 2004.

Thomas G. Ioppolo

Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHOOSE LIFE ILLINOIS, INC.,          )
et al.,                              )
                                     )
                  Plaintiff,         )
                                     )
         v.                          )      No. 04 C 4316   U.S. DISTRICT COURT
                                     )
JESSE WHITE, Secretary of State,     )      Judge Coar
State of Illinois,                   )
                                     )
                  Defendants.        )

**FILED**

SEP 2 2 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DOCKETED**

OCT 0 8 2004

## MOTION TO DISMISS

The defendant, Jesse White, the Illinois Secretary of State, by his attorney, LISA

MADIGAN, Attorney General of Illinois, moves the Court, pursuant to Rule 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint.

In support of this motion, defendant states as follows:

1.      The individual plaintiffs lack standing to sue.  Their claims do not present

an actual concrete case or controversy under Article III of the Constitution.  The Court

lacks subject matter jurisdiction to hear the claims of the individual plaintiffs.

2.      The Illinois specialty license plate program, merely because it approves

some but not all requests for special plates, does not constitute impermissible viewpoint

discrimination under the First Amendment.  The complaint fails to state a claim upon

which relief can be granted.

1



3.    A memorandum of law is submitted in support of this Motion.


Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois


THOMAS A. IOPPOLO
Assistant Attorney General
General Law Bureau
100 West Randolph St., 13th floor
Chicago, Illinois 60601
312/814-7198

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHOOSE LIFE ILLINOIS, INC.,                )
et al.,                                     )
                                            )        **FILED**
                    Plaintiff,              )
                                            )        SEP 2 2 2004
        v.                                  )   No. 04 C 4316
                                            )        MICHAEL W. DOBBINS
JESSE WHITE, Secretary of State,            )        CLERK, U.S. DISTRICT COURT
State of Illinois,                          )   Judge Coar
                                            )
                    Defendants.             )



## DEFENDANT'S MEMORANDUM OF LAW
## <u>IN SUPPORT OF MOTION TO DISMISS</u>

**DOCKETED**

OCT 0 8 2004

### <u>BACKGROUND</u>

The plaintiffs are Choose Life Illinois, Inc., an Illinois not-for-profit corporation,

and 15 individuals who support the organization. The plaintiffs support and advocate

the cause of adoption as an alternative to abortion. They seek the approval of a

"Choose Life" specialty license plate in Illinois. Plaintiffs have submitted petitions with

25,000 signatures in support of a "Choose Life" license plate, but the Illinois General

Assembly has not passed legislation permitting the plate.

Plaintiffs challenge the Illinois law on the issuance of specialty license plates,

625 ILCS 5/3-600 et seq. That section provides that the Secretary of State shall not

issue a special plates unless 10,000 applications have been received, except that "the

Secretary of State may prescribe some other required number of applications if that

number is sufficient to pay for the total cost of designing, manufacturing, and issuing

1



the special license plate." 625 ILCS 5/3-600(a). The Secretary requires that all

specialty plates must be approved by the General Assembly through the passage of

legislation. The "New Plate Categories" fact sheet issued by the Secretary states that

"Legislation must be introduced (by a legislator, either in the Senate or House), passed

by both chambers, and signed into law by the Governor. The Secretary can not

arbitrarily begin issuing a new plate category." (Pl. Ex. B). The Secretary's fact sheet

goes on to state that as the number of initial requests for the special plates approaches

850, the Secretary of State's Communication Department "works with someone

representing the special interest group on a design of the plate." Then, "a sample plate,

designed as agreed to by the group and the Secretary of State, with the approval of law

enforcement, is produced and signed off by all the aforementioned parties." Id.

When the petitioning group has received authorization for the plate, it can be

obtained by the public, for certain vehicle types as prescribed by law. The plate

typically costs more than the basic Illinois plates, with the extra money used in part to

reimburse the Secretary's costs and, for some plates, going into a special fund created

by the Treasurer, which then pays the money annually to the charitable cause

supported by the organization. Id. Examples are the Organ Donor Awareness license

plates (money donated to Regional Organ Bank of Illinois), 625 ILCS 5/3-646; D.A.R.E.

(Drug Abuse Resistance Education) license plates (money donated to state, county, or

municipal D.A.R.E. fund), 625 ILCS 5/3-637; Pet Friendly license plates (money

donated to humane societies), 625 ILCS 5/3-653.

In addition to these plates which are in effect fund-raising devices for various

organizations, there is a different category of special plates which do not collect money

2

for charity, but in effect honor the particular status of the plate holder. The military plates are an example, for Purple Heart recipients, prisoners of war, Korean war veterans, and so on. There are also special plates for current and former members of the General Assembly, and retired members of Congress. These plates do not have the fund-raising dimension that the "not-for-profit organization plates" have. A full listing of the special plate categories can be seen of 625 ILCS 5/3-600 et seq.

Plaintiffs contend that the Illinois speciality plate program violates the First Amendment. Plaintiffs allege that the program discriminates on the basis of viewpoint, allowing some political or social messages and not others. Plaintiffs seek a declaratory judgment that the manner of approving and creating specialty plates violates the First Amendment, and an injunction against the Secretary of State from awarding, approving or distributing any new specialty plates, or from renewing any already-issued specialty plates. Plaintiffs do not seek an "affirmative" injunction compelling the Secretary of State to issue a "Choose Life" license plate, but rather a "negative" injunction stopping the specialty plate program in its entirety.

## I. THE INDIVIDUAL PLAINTIFFS LACK STANDING TO SUE.

As noted earlier, there are 15 individual plaintiffs as well as the corporate plaintiff, Choose Life Illinois, Inc. The complaint alleges that the individual plaintiffs are either members of Illinois Choose Life or hold pro-life, pro-adoption views and would buy a "Choose Life" license plate if offered. We address first the question of whether the individual plaintiffs have standing to sue.

Article III of the Constitution limits the jurisdiction of the federal courts to "cases and controversies," which means that the person invoking the court's jurisdiction must present a claim that is sufficiently particularized and concrete so that the court can grant meaningful relief to that litigant. "When considering whether a party satisfies the constitutional requirement of standing, the court must determine that the plaintiff has suffered some threatened or actual injury resulting from the putatively illegal action." Massey v. Helman, 196 F.3d 727, 739 (7th Cir. 1999), quoting Linda R.S. v. Richard D., 410 U.S. 614, 617 (1973) (internal quotation marks omitted).

The Article III requirements of standing are (1) the party must have personally suffered an actual or threatened injury caused by the defendant's illegal conduct; (2) the injury must be fairly traceable to the challenged conduct; and (3) the injury must be one that is likely to be redressed by a favorable decision. Allen v. Wright, 468 U.S. 737, 791 (1984); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62 (1992); United Transportation Union-Illinois Legislative Board v. Surface Transportation Board, 183 F.3d 606, 611 n.2 (7th Cir. 1999); Lehn v. Holmes, 364 F.3d 867, 871 (7th Cir. 2004); U.S. v. 55351 Tuthill Road, Naperville, Illinois, 233 F.3d 1017, 1022 (7th Cir. 2000). It is an "irreducible constitutional minimum" of Article III standing that the injury alleged be "concrete and particularized." Rifkin v. Bear Stearns & Co., Inc., 248 F.3d 628, 632 (7th Cir. 2001). It is not enough if the plaintiff's grievance is one shared by everyone as whole. The Seventh Circuit has said that plaintiffs who have "merely an intellectual or academic curiosity" in the outcome of a suit, or who suffer "purely psychological harm" or "simple indignation," or who allege an impact on "one's opinions, aspirations, or ideology," do not allege a sufficient, concrete, non-speculative injury to meet standing

4

requirements.  U.S. v. 55351 Tutill Road, Naperville, Illinois, 233 F.3d at 1022.

There are also prudential limitations on standing that may bar a party from advancing a claim.  Probably the most important is that a party should not be allowed to assert the rights of third parties.  Shimer v. Washington, 100 F.3d 506, 508 (7th Cir. 1996).  The Court will consider whether there is some hindrance to the third party's ability to protect its own interest.  Id.

Judged by this criteria, the fifteen individual plaintiffs lack standing to sue.  Their interest is not concrete and particularized enough.  While defendant does not at all doubt the sincerity and conviction with which the individual plaintiffs hold their pro-life, pro-adoption views, nevertheless their views are shared by many people, and indeed the individuals are no different from other persons who hold sincere views on any number of social or political issues.  Injury to "opinions, aspirations, and ideology" is not enough to meet Article III standing requirements.  See Henderson v. Stalder, 287 F.3d 374, 381 (5th Cir. 2002) (individuals suing because of existence of "Choose Life" plate lack standing to sue because their claimed injury, the inability to express a pro-choice view, not redressable).

As discussed earlier, the specialty license plate program in Illinois encompasses two main categories:  first, plates are issued to individuals largely as an honorific, noting their military status, military decorations, or their status as a current or retired politician.  The other category is for not-for-profit groups with a particular charitable or environmental purpose, with money from the plates going to their particular organization, or, in other cases, to a state fund used for a particular purpose (natural resources in the case of the Sportsmen Series plates for fishermen and hunters, see

5

625 ILCS 5/3-631). There really is in Illinois no specialty plate for an individual to express a particular social viewpoint, for example a pro-adoption plate, or a plate favoring humane treatment for animals, apart from the organizational sponsorship associated with that viewpoint. Many people might want to express the fact that they are Democratic or Republican or a member of a particular religious faith on a state license plate, but that grievance is too generalized to meet the test of a concrete injury-in-fact.

Moreover, the claims of the individual plaintiffs appear really to be an assertion of the rights of a third party who is also a plaintiff, Choose Life Illinois, Inc. The complaint alleges that it was Illinois Choose Life which sought legislation for the license plate, and Choose Life as the not-for-profit organization that would potentially receive funds from the sale of the plate. Choose Life Illinois, Inc., is capable of asserting its own rights in this case, a significant factor that cuts against allowing the individual plaintiffs in the case. It is true that third-party standing rules are sometimes relaxed in First Amendment cases, because of a possible chilling effect on protected expression: "Litigants ... are permitted to challenge a statute not because their own rights of free expression are violated but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Shimer v. Washington, 100 F.3d at 508, quoting Secretary of Maryland v. Joseph M. Munson Co., 467 U.S. 947, 956 (1984). In this case, however, the rationale of expanded third-party standing does not apply. The specialty plate program is not an affirmative restriction on the individual's right to free speech. The individuals have many other avenues of expressing their

6

"Choose Life" message, ranging from bumper stickers to larger-scale advertising and advocacy. This is not a "chilling effect" case which justifies the relaxation of the rule against third-party standing. Defendant is not challenging the standing of Choose Life Illinois Inc. to raise its First Amendment challenge to the specialty plate program. Its status as a not-for-profit advocacy group, of the type that have received specialty plates in the past gives it standing to sue to enjoin what it alleges to be a discriminatory, underinclusive program.

II.     THE SPECIALTY LICENSE PROGRAM DOES NOT VIOLATE THE FIRST
        AMENDMENT. THE LICENSE PLATE IS A FORM OF "GOVERNMENT
        SPEECH" AND CONSEQUENTLY THE GOVERNMENT CAN DECIDE
        WHICH MESSAGES IT WANTS TO ENDORSE.

There have been a small number of First Amendment challenges to specialty license plates in different states. A number of cases, in factual situations that differ somewhat from the Illinois program, have struck down specialty license plate programs, but with many different approaches, and many strong dissenting opinions. The cases have discussed several factors in evaluating the First Amendment issues: whether the speech on the plate is private speech, or government speech, or in effect both; whether permitting some license plate messages and not others constitutes viewpoint discrimination of private speech; whether the government can refuse to permit specialty license plates with certain messages because it has a legitimate interest in not appearing to endorse those messages on its state-manufactured license plates; whether the license plate is some sort of non-public or public forum.

7

In Sons of Confederate Veterans, Inc. ex rel. Griffin v. Commission of Virginia

Dept. of Motor Vehicles, 288 F.3d 610 (7th Cir. 2002), the Sons of Confederate

Veterans applied for a special license plate. The State granted their request, but would

not allow the organization to use its logo, the Confederate flag, on the plate. In Virginia,

the design of the plate was a "cooperative process" between the Department of Motor

Vehicles and the group authorized to receive a special plate. Id. at 614. The state's

general policy stated that the organization could use its own logo or create a logo. In

restricting use of the logo for the SCV, the Virginia legislature created an exception for

this one organization.

The Court first had to decide whether the speech on the special plates was

private speech or government speech. The government can speak for itself, can

promote its own message, and can of course express some viewpoints and not others

without running afoul of the First Amendment. Id. at 616-17. In determining whether

speech is government speech or private speech (and thus insulated from viewpoint-

based discrimination), the court in SCV focused on several factors: (1) the central

purpose of the program in which the speech in question occurs; (2) the degree of

editorial control exercised by the government or private entities over the content of the

speech; (3) the identity of the "literal speaker"; (4) whether the government or the

private entity bears the "ultimate responsibility" for the content of the speech, in

analyzing circumstances where both government and a private entity are claimed to be

speaking. Id at 618.

The Court did not rest its decision on whether the specialty plate program was a

public forum or not. The Court concluded that the speech on the plate was

8

fundamentally private, even though the State of Virginia owns the plates, and that the logo restriction constituted a form of viewpoint discrimination of private speech which could not be justified by a compelling state interest. Id at 626-27.

On a petition for rehearing, the Court declined to rehear the case by a 6-5 vote. 305 F.3d 241 (4th Cir. 2002). Two dissenting judges, Judges Niemeyer and Gregory, argued that the license plate was government speech, and that the state had a strong interest in disassociating itself from the Confederate flag, because having the flag on the plate conveys the impression that Virginia endorses the flag and the symbolic connotations it conveys. Id. at 252. Judge Niemeyer believed the plate was a form of government speech: "The fact that the licensee also speaks by choosing to display a customized but authorized version of the license plate does not change the fact that the license plate itself was the issue of the State and therefore constitutes government speech." Id. at 251. Judge Lutting, voting to deny the rehearing, concluded that the plate is in reality a "neither exclusively that of the private individual nor exclusively that of the government but, rather, hybrid speech of both." Id. at 245.

The Fourth Circuit again had basically the same issue before it in Planned Parenthood of South Carolina v. Rose, 361 F.3d 786 (4th Cir. 2004). South Carolina issued a "Choose Life" license plate like the one sought in this case by plaintiffs, and was sued by Planned Parenthood (which advocates a pro-choice stance on the question of abortion rights). After concluding the plaintiff had standing to sue, the Court held that the State's authorization of the "Choose Life" plate constituted viewpoint discrimination in violation of the First Amendment, but the panel produced three separate opinions. The full court voted to deny rehearing en banc by an 8-5 vote,

9

producing more individual opinions. Judge Shedd, for example, dissenting, concluded that the panel opinion too quickly ignored the State's role as the predominant speaker of the message and that the State could in fact choose to favor some messages over others because it was the speaker: "Just as the State should be deemed the literal speaker of the 'Choose Life' message, so the State will bear ultimate responsibility for that message. The General Assembly alone created the message, and it wrote the message into state law for the watching electorate to see." Id. at 587.

In Women's Resource Network v. Gourley, 305 F.Supp.2d 1145 (E.D.Cal. 2004), plaintiff sought unsuccessfully to obtain authorization from the California legislature for a "Choose Life" license plate. The Court held that the Women's Resource Network, as the only entity authorized under California law to request a specialty plate, had standing to sue to seek a specialty plate, but not individual motorists who merely desired to purchase the plate. 305 F.Supp.2d at 1150. And even the Women's Resource Network was found not to have standing to challenge all of the honorific or prestige plates, such as those noting military honors or "commemorative plates," for example a plate on the Bicentennial of the Bill of Rights, but only that section of California law giving certain non-profit organizations the right to seek authorization for a specialty plate. The Court did enjoin California from approving any new plates because it concluded the statute was a form of viewpoint discrimination,. Id. at 1154. At the same time, it refused to enjoin all the specialty plates previously enacted, holding that the adoption of the specialty plates represented a form of hybrid speech, following Judge Luttig's analysis in SCV II. 305 F.Supp.2d at 1161.

10

The view that the license plates are a form of government speech is the correct approach to take. In <u>Wooley v. Maynard</u>, 430 U.S. 705 (1977), a motorist objected to the New Hampshire state motto, "Live Free or Die," on his license plate. The Court held that New Hampshire did not have the right to force the plaintiff to use his car as a "mobile billboard" for his State's ideological message. 430 U.S. at 714. The case is explicable only if it is recognized that speech interests of two parties are implicated -- New Hampshire has a right to have a motto, to express it, and to put it on all sorts of government property, but that the private individual also has a right not to be forced to communicate it. This case is in effect a mirror image of <u>Wooley</u> -- the private speaker is claiming a right to force the State to accept its message on the state plates, and if the State refuses, to prohibit the State from conveying any message it wishes to speak, in conjunction with other private individuals who do approve the message (cancer prevention, environmental protection, avoidance of drug abuse). If the State were compelled to adopt a Choose Life plate, it would also be forced to have a pro-choice plate. If the State's license plate program is like a public forum open to all, it cannot discriminate based on viewpoint -- it would have to issue Ku Klux Klan plates, Nazi plates, plates that were pro death-penalty, anti-death penalty, pro-Iraq war, anti-Iraq war, assuming 750-850 signatures could be gathered for each viewpoint to be expressed.

It is undeniable that when a State issues a special license plate, it gives the impression that it approves the message and is associating itself with the message. It is also clear that when a special plate is developed, it requires a high degree of involvement by the Secretary of State's office and other state offices in design and

11

development and eventually money collection and distribution. Any new specialty plate must be approved by law enforcement. See plaintiffs' Ex. B, New Plate Categories fact sheet. In developing the plate, the Secretary's fact sheet states, "...[O]ur Communication Department works with someone representing the special interest group on a design of the plate." Id. "A sample plate, designed as agreed to by the group and the Secretary of State, with the approval of law enforcement, is produced and signed off by all the aforementioned parties." Id. If the question were ever asked if the plate was designed "under color of state law," i.e., with significant involvement by the State, there would be no question that it was. Because of that state involvement, the state has an interest in selecting only those messages on special plates it chooses to associate with, and avoiding messages it does not endorse. The special license plates are not the equivalent of a state auditorium or village hall which, if open to one group or viewpoint, must be open to all. See DeBoer v. Village of Oak Park, 267 F.3d 558 (7th Cir. 2001).

The "literal speaker" is the person who seeks to display a "Choose Life" plate and the government, who manufactures and helps design the plate. Both parties exercise some editorial control. Plate designs that would obscure identification would be vetoed by law enforcement. The "ultimate responsibility" for the speech is the State's. Only with the state legislature's approval can a plate be issued. While it is obvious that the private motorist conveys a message with the plate which in effect "advertises" his or her support for an organization (and is donating money to the organization with the higher plate fee), it is equally true the government is seen as being in support of the message by printing a logo and words on the plate.

12

As the dissenting judges noted in Sons of Confederate Veterans and Planned Parenthood, the government can speak for itself, and "this authority to speak necessarily carries with it the authority to select from among various viewpoints those that the government will express as its own". Sons of Confederate Veterans, 305 F.3d at 249-50, citing Board of Regents of Univ. of Wisconsin System v. Southworth, 529 U.S. 217, 229 (2000) and Rust v. Sullivan, 500 U.S. 173, 194 (1991). The government can "regulate the content of its own speech when it is the speaker, or when it enlists private entities to convey its own message." Rosenberger v. Rector & Visitors of University of Virginia, 515 U.S. 819, 833 (1995). "Government may promote one side of an issue, provided that it does not inhibit opponents' use of private resources." First Defense Legal Aid v. City of Chicago, 319 F.3d 967, 972 (7th Cir. 2003). The corollary point is that it may choose not to promote one side of an issue. See also Norton, Government's Interest in Protecting the Integrity of its Own Expression, 37 U.C. Davis L. Rev. 1317 (2004). The government is always politically accountable for the messages it chooses to endorse or not endorse.

At present, Illinois has chosen not to adopt a "Choose Life" license plate, but this does not prevent proponents of the "Choose Life" message from buying bumper stickers, advertising, or communicating this message in any number of other ways. Merely because Illinois permits special plates on any one of a number of topics which avoid the pro-life v. pro-choice debate does not mean it must adopt one view or the other on all controversial issues of the day. Many of the plates do not even advocate any position at all, but merely honor someone's status as a military veteran. In effect, the specialty license plate program would be commandeered by every group wishing to

13

promote a message. The State's decision not to endorse a particular message does not violate the plaintiffs' First Amendment rights. For every specialty plate, there are two speakers. No plate can issue until both agree. Until they do, neither side can compel the other to speak the message.

The complaint does not state a First Amendment claim. The Illinois specialty license plate program does not constitute impermissible viewpoint discrimination of private speech.

## CONCLUSION

For the foregoing reasons, the defendant, Jesse White, the Illinois Secretary of State, requests that his motion to dismiss be granted.

Respectfully submitted,

LISA MADIGAN
Attorney General of Illinois

THOMAS A. IOPPOLO
Assistant Attorney General
General Law Bureau
100 W. Randolph, 13th Floor
Chicago, Illinois 60601
(312) 14-7198

14