IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHOOSE LIFE ILLINOIS, INC., et al., ) ) ) Plaintiff, ) ) v. ) ) JESSE WHITE, Secretary of State, ) State of Illinois, ) ) Defendants. ) | No. 04 C 4316 Judge Coar |

## NOTICE OF FILING

TO: Mr. Thomas Brejcha
Thomas More Society
29 S. LaSalle, Suite 440
Chicago, Illinois 60603

PLEASE TAKE NOTICE that on October 28, 2004, I filed with the Clerk of the United States District Court, Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois 60604, the attached **DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**, a copy of which is herewith served upon you.

LISA MADIGAN
Attorney General of Illinois

THOMAS A. IOPPOLO
Assistant Attorney General
General Law Bureau
100 West Randolph St., 13th floor
Chicago, Illinois 60601
312/814-7198

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served upon the above named at the address indicated by first class mail, postage prepaid on October 28, 2004.

Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHOOSE LIFE ILLINOIS, INC., et al., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 04 C 4316 |
| JESSE WHITE, Secretary of State, State of Illinois, | ) ) ) ) | Judge Coar |
| Defendant. | ) ) | |

## DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

The defendant, JESSE WHITE, Illinois Secretary of State, submits the following answer to the plaintiff's complaint:

**Nature of Case**

1. This is a civil rights action, pursuant to 42 U.S.C. § 1983, by which plaintiffs, an Illinois non-profit corporation as well as Illinois residents committed to foster and promote the cause of adoption, sue to redress and repair the invidiously discriminatory denial of their fundamental right of access to a public forum -the display of their pro-adoption message, "choose life," on automobile specialty license plates for which over 25,000 Illinois residents have signed petitions. Despite its repeated, unjustified, and arbitrary censorship of plaintiffs' pro-adoption message, the State of Illinois has continued to make such specialty license plates freely accessible and available to other Illinois residents and groups promoting differing political viewpoints. As is more fully hereinafter alleged, this discriminatory exclusion of plaintiffs' political speech from this otherwise generously accessible, salient segment of "the public square" in our State of Illinois, pursuant to an inherently flawed system that vests state officials with unbridled, utterly standardless discretion to approve or reject prospective applicants, such as plaintiffs, on the basis of the political viewpoints they would express, constitutes a blatant and flagrant instance of viewpoint discrimination. That in turn represents a serious infringement of plaintiffs' fundamental rights under the First and Fourteenth Amendments to the United States Constitution to freedom of speech, due process of law and the equal protection of the laws.

**ANSWER:** Defendant admits that plaintiffs have brought this action because they allege the denial of a "Choose Life" license plate violates their rights under

the First and Fourteenth Amendments. Defendant admits the State has received petitions from individuals supporting a "Choose Life" plate. Defendant has insufficient knowledge or information to form a belief as to the truth of the exact number of people signing such petitions. Defendant denies that he has violated plaintiffs' constitutional rights, and denies the remaining allegations of paragraph 1.

### The Parties

2. Plaintiff, Illinois Choose Life, Inc. ("Illinois Choose Life") is an Illinois not-for-profit corporation, organized for charitable and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code and Section 103.05 of the Illinois Not-for-Profit Corporation Act ("the Act"). Illinois Choose Life is in good standing with the State of Illinois. Pursuant to the Act, 805 ILCS 105/103.10(b)(West Supp. 2003), Illinois Choose Life is empowered to sue when one or more of its members would otherwise have standing to sue in his or her own right, and here over 25,000 Illinois residents have signed petitions seeking the approval of a "choose life" speciality license plate in Illinois, many thousands of whom are committed to buy said license plate if ever approved and are aggrieved by its arbitrary and repeated disapproval. Also, the purpose of this lawsuit is clearly germane to the stated purposes of Illinois Choose Life, which are *inter alia* to "promote within the State of Illinois the adoption of children, to increase public awareness about the importance of adoption, to educate the public concerning the adoption of children," etc. Nor is the participation of individual members of Illinois Choose Life required either for the prosecution of this lawsuit or for the relief requested herein. For these same reasons, the plaintiff, Illinois Choose Life, also has standing to sue for its members herein as a matter of federal constitutional law, as the defendant has been joined in an actual "case or controversy," pursuant to Article III of the U.S. Constitution.

**ANSWER:** Defendant admits Illinois Choose Life, Inc., is an Illinois not-for-profit corporation in good standing status with State of Illinois. Defendant has insufficient knowledge or information to form a belief as to the truth of exactly how many individuals have signed petitions supporting a "Choose Life" speciality license plate. Defendant admits Illinois Choose Life, Inc. has standing to sue.

2

3. In any event, several members of Illinois Choose Life who are personally aggrieved by reason of the defendant's vague, subjective, and viewpoint-discriminatory enforcement of Illinois' flawed statutory scheme for the issuance of speciality auto license plates have elected to press claims herein, as individuals. They, too, must be granted to have standing to sue herein. The first of these Plaintiffs, Richard and Sue Bergquist, are married and reside in Naperville, Illinois. They have eleven children, nine of whom are adopted, and six of whom have special needs. The Bergquists are fervent advocates of adoption. They are aggrieved by the State of Illinois' failure to approve a "choose life" license plate, promoting adoption, which they would have purchase but for the plate's having been disapproved. The Bergquists are both directors of Illinois Choose Life.

**ANSWER:** **Defendant admits Mr. and Mrs. Bergquist are on the Board of Directors of Illinois Choose Life. Defendant has insufficient knowledge or information to form a belief as to the truth of the allegations concerning Mr. and Mrs. Bergquist, their family and their views on the merits of this case. Defendants deny the characterization of the defendants' license plate program as "flawed" and violative of First Amendment rights and deny that these plaintiffs have standing to sue.**

4. Plaintiff, James ("Jim") and Phyllis Finnegan, also are a married couple residing in Barrington, Illinois. Jim Finnegan, a retired businessman, is presiding and a director of Illinois Choose Life. The Finnegans, who have seven children and twenty grandchildren, also have had family experiences with adoption, for which they too are fervent advocates. As Illinois automobile owners, they also have been aggrieved by the failure of the State of Illinois to approve the issuance of a speciality "choose life" license plate, which would both promote and generate revenue for the cause of adoption in Illinois, and which they would have purchased, had it been approved and offered for sale.

**ANSWER:** **Defendant admits Mr. Finnegan is President of Illinois Choose Life. Defendant has insufficient knowledge or information as to the truth of the remaining allegations of paragraph 4.**

3

5.   Daniel ("Dan") Gura, a real estate appraiser, and Sandra ("Sandy") Gura, his wife and a flight attendant, reside in Lake Zurich, Illinois. Married for nearly 11 years, the Guras have four children, two of whom are adopted. They too are strong advocates for adoption, and they would have purchased a "choose life" speciality license plate had it been approved and offered for sale by defendant, the Secretary of State for Illinois.

**ANSWER:   Defendant has insufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 5.**

6.   Becky MacDougall is one of the key personnel at Sunny Ridge Family Center in Wheaton, Illinois, an adoption aid organization. Ms. MacDougall, an adoptive mother herself, has been a tireless and outspoken advocate for adoption. She would have purchased a "choose life" license plate had it been approved and offered for sale in Illinois.

**ANSWER:   Defendant has insufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 6.**

7.   Virginia McCaskey, of the Chicago Bears, a resident of Des Plaines, Illinois, has urged that the wonderful promotion of adoption should not be made into a contentious political issue, as the "choose life" speciality license plates can be important in aiding the providers of adoption services. Virginia is a director of Illinois Choose Life.

**ANSWER:   Defendant admits Mrs. McCaskey is an owner of the Chicago Bears, and on the Board of Directors of Illinois Choose Life. Defendants has insufficient knowledge or information to form a belief as to the remaining allegations of paragraph 7.**

8.   Thomas ("Tom") Morrison and Bethany Morrison, his wife, were recently married and reside in Palatine, Illinois. Tom teaches at the Christian Liberty Academy in Arlington Heights, Illinois. Together, the Morrison's have crusaded ardently for the cause of adoption. As Illinois automobile owners, the Morrisons would have purchased a "choose life" specialty plate, had, it been approved and offered for sale in Illinois.

**ANSWER:** **Defendant has insufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 8.**

9. Dan Proft is president of Illinois Leader Media Company and publisher of the *Illinois Leader.* He has been active in several Illinois political campaigns and has provided media relations and political guidance to Illinois Choose Life. The cause of adoption is dear to him, as he was adopted. Dan would have purchased an Illinois "choose life" specialty plate, had it been approved and offered for sale.

**ANSWER:** **Defendant has insufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 9.**

10. Richard and Jill Stanek, a married couple, reside in Mokena, Illinois. Jill Stanek's revelations about Christ Hospital's leaving infants, targeted for abortion who were nonetheless born alive, to die without medical care, won national attention and sparked the passage of the federal Infants Born Alive Protection Act two years ago. She has spoken out strongly and eloquently on behalf of adoption and, more specifically, in favor of Illinois' approval of a "choose life" specialty license plate. The Staneks have been aggrieved by the State's failure and refusal to approve such a plate and offer it for sale; had it been approved and offered, they would have bought such a speciality plate for a family automobile.

**ANSWER:** **Defendant has insufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 10.**

11. Joseph J. ("Joe") and Carol Walsh have been married almost 35 years and reside in Libertyville, Illinois. They have four living children and six grandchildren. Carol is president and Joe is director of Lake County Right to Life. Both are directors of Aid for Women of Northern Lake County, a crisis pregnancy center in Waukegan which opened its doors back in April, 1983. The Walshes have taken many people into their home in order to help them choose life, and they have advocated powerfully for Illinois' approval of "choose life" speciality license plate, whose sale - to at least a very substantial portion of the more than 25,000 signatories (so far!) of a petition for approval of such a special license plate - would be likely to generate substantial revenue, for the benefit of both the State of Illinois and the cause of adoption.

**ANSWER:** **Defendant has insufficient knowledge or information to form a belief**

as to the truth of the allegations of paragraph 11.

12. Defendant, Jesse White, sued herein only in his Official Capacity as the Secretary of State of the State of Illinois ("the Secretary" or "Secretary White"), is charged with the statutory duty of issuing vehicle license plates and administering the special license plate programs in the State of Illinois.

**ANSWER: Defendant admits the allegations of paragraph 12.**

**Jurisdiction and Venue**

13. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§1331, 1343(a)(3), and 1343(a)(4).

**ANSWER: Defendant admits the allegations of paragraph 13.**

14. Plaintiffs' claim for declaratory and injunctive relief is authorized by 28 U.S.C. §§2201 and 2202; by Rules 57 and 65 of the Federal Rules of Civil Procedure; and by the general equitable powers of this Court.

**ANSWER: Defendant admits the existence of the statutes and rules cited in paragraph 14. Defendant denies plaintiffs are entitled to relief on the merits of this case.**

15. Venue is properly laid in this District pursuant to 28 U.S.C. §1391(b).

**ANSWER: Defendant admits the allegations of paragraph 15.**

**Introduction**

16. Motor vehicles registered in the State of Illinois generally need to bear license plates issued by the Illinois Secretary of State's Vehicle Services Department ("VSD") under the oversight and direction of the defendant, Jesse White, acting in his Official Capacity as Secretary of State of the State of Illinois. When vehicle owners request license plates from the VSD, the VSD typically gives owners a choice of license plates. Either the owner can request standard license plates or he or she can pay extra and ask to purchase a specialty license plate ("specialty plate"). Such specialty plates bear a medley of various political and/or special interest messages which the vehicle owner may choose to purchase and display on his or her vehicle. The proceeds for purchase of these specialty license plates may inure to the benefit of the various

special interest groups which sponsored each such specialty plate. The VSD advertises the availability of speciality plates through a variety of means, including *inter alia* through color flyers. A true and correct copy of pp. 1 through 8 inclusive of one such flyer is attached hereto as Exhibit A.

**ANSWER:** **Defendant admits the allegations of paragraph 16.**

17. The statutory requirements for issuance of special plates in Illinois are prescribed at 625 ILCS 5/3-600. The Secretary of State is there barred from issuing a series of special plates "unless applications, as prescribed by the Secretary, have been received for 10,000 plates of that series; except that the Secretary of State may prescribe some other required number of applications if that number is sufficient to pay for the total cost of designing, manufacturing and issuing the special license plate." No other prerequisites (apart from notification of law enforcement on approval of any new plate) are set forth for the Secretary's approval and issuance of any new specialty license plate. Nevertheless, defendant White has issued a nine-point written policy relating to "New Plate Categories," a true copy of which is also attached hereto as Exhibit B. Pursuant to this policy, while defendant White reduced the requisite number of requests or applications for a new plate from the statutory target of 10,000 to an indefinite number "approach[ing] the 850 level (somewhere between 750 & 850 ...)," he also imposed an entirely new and independent requirement, that is nowhere required or even suggested in the governing statutory provision *(supra)*. Thus defendant, White requires that, "Legislation must be introduced (by a legislator, either in the Senate or the House), passed by both chambers, and signed into law by the Governor:. The Secretary can not arbitrarily begin issuing a new plate category." (Exhibit B, ¶1). But this additional requirement for legislative approval fixes no standards, limits, criteria by which access to a new specialty license plate will be regulated or determined. Nor is there any transparency to this procedure, which provides for no findings, nor explanation, nor justification, much less for any judicial review in the event that efforts to secure legislative approval may fail. Thus plaintiffs challenge defendant White's practice of awarding plates under this standardless, unguided, discretionary regulatory scheme which he administers simply by deferring to the naked *fiat* of the General Assembly. Defendant White determines which privately sponsored expressions and viewpoints may be expressed or proclaimed on Illinois' speciality license plates based only on an "up" or "down' unexplained, arbitrary vote in the General Assembly - that is, if a proposed speciality plate should even proceed far enough through the legislative process to reach the voting stage. Under the current system, defendant White will allow the creation and distribution of a particular speciality plate only if the Illinois General Assembly agrees with the expression and viewpoint being proposed. Defendant While will not allow private groups and individuals interested in expressing views on their license plates to do so, if the General Assembly should not actually pass a bill approving of the expression of such views. This is an improper procedure that opens the door to content-based and viewpoint-sensitive censorship of unpopular or minority views that fall short of winning decisive majority support, that amounts to discriminatory banning of disfavored political speakers from one of Illinois' most

prominent *agora's* or "marketplaces of ideas." This violates Plaintiffs' free speech rights and equal protection rights under the First as well as the Fourteenth Amendments to the United States Constitution.

**ANSWER:** **Defendant admits that the statutory requirements for the issuance of special plates are stated in 625 ILCS 5/3-600. Defendant admits that he has also issued a "New Plate Categories" document specifying that the General Assembly must approve specialty license plates and that, once approved by law, if 850 people have requested a new plate, the new plate will be produced. Defendants deny the remaining allegations of paragraph 17, and deny that the administrative and statutory procedures violate the First and Fourteenth Amendments.**

## Narrative Facts

18. Thus defendant White oversees, implements, administers, and executes Illinois' speciality license plate statutory scheme by which private, non-profit organizations can seek to have special designs or messages printed on license plates that are then sold to the public at higher prices than ordinary or standardized license plates. There are currently some 60 speciality license plates which exist in Illinois, at least 27 of which have been privately "sponsored" by special interest or advocacy groups (numbers 1 through 27):

    (1)    Korean War Veteran License Plates, 625 ILCS 5/3-626;

    (2)    Environmental License Plate, 625 ILCS 5/3-627;

    (3)    Prevent Violence License Plate, 625 ILCS 5/3-630;

    (4)    Sportsmen Series License Plate, 625 ILCS 5/3-631;

    (5)    Wildlife Prairie Park License Plate, 625 ILCS 5/3-632;

    (6)    Illinois Firefighters' License Plate, 625 ILCS 5/3-634;

    (7)    Master Mason Plates, 625 ILCS 5/3-635;

    (8)    Knights of Columbus Plates; 625 ILCS 5/3-636;

(9) DARE License Plates, 625 ILCS 5/3-637;

(10) Illinois and Michigan Canal License Plates, 625 ILCS 5/3-640;

(11) Mammogram License Plates, 625 ILCS 5/3-643;

(12) Police Memorial Committee License Plates, 625 ILCS 5/3-644;

(13) Organ Donor Awareness License Plates, 625 ILCS 5/3-646;

(14) Education License Plates, 625 ILCS 5/3-648;

(15) Hospice License Plates, 625 ILCS 5/3-648;

(16) U.S. Marine Corps License Plates, 625 ILCS 5/3-651;

(17) Pet Friendly License Plates, 625 ILCS 5/3-653;

(18) Lewis and Clark Bicentennial License Plates, 625 ILCS 5/3-653;

(19) September 11th "America Remembers" License Plates, 625 ILCS 5/3-653;

(20) Illinois Route 66 License Plates, 625 ILCS 5/3-653;

(21) Illinois Public Broadcasting System Stations License Plates, 625 ILCS 5/3-654;

(22) Pan Hellenic License Plates, 625 ILCS 5/3-654;

(23) Collegiate License Plates, 625 ILCS 5/3-629;

(24) Chicago and Northeast Illinois District Council of Carpenters License Plates, 625 ILCS 5/3-652;

(25) Park District Youth Program License Plates, 625 ILCS 5/3-654;

(26) Professional Sports Teams License Plates, 625 ILCS 5/3-654;

(27) Stop Neuroblastoma License Plates, 625 ILCS 5/3-654;

(28) Members of the General Assembly, 625 ILCS 5/3-606.1;

(29) Retired Members of the General Assembly, 625 ILCS 5/3-606.1;

(30) Amateur Radio Operators, 625 ILCS 5/3-607;

(31) Disabled Veterans, 625 ILCS 5/3-609;

(32) Congressional Medal of Honor Recipients, 625 ILCS 5/3-609.1;

(33) Members of Congress, 625 ILCS 5/3-610;

(34) Retired Members of the Illinois Congressional Delegation, 625 ILCS 5/3-610.1;

(35) Repossessor, 625 ILCS 5/3-612;

(36) Special Inaugural License Plates, 625 ILCS 5/3-613;

(37) Honorary Consular License Plates, 625 ILCS 5/3-615;

(38) License Plates for Disabled Individuals, 625 ILCS 5/3-616;

(39) Drivers Education, 625 ILCS 5/3-617;

(40) Charitable Vehicle, 625 ILCS 5/3-618;

(41) Ex-Prisoners of War, 625 ILCS 5/3-620;

(42) Illinois National Guard, 625 ILCS 5/3-621;

(43) Members of Armed Forces Reserves, 625 ILCS 5/3-622;

(44) Purple Heart, 625 ILCS 5/3-623;

(45) Retired Armed Forces, 625 ILCS 5/3-624;

(46) Pearl Harbor Survivor, 625 ILCS 5/3-625;

(47) Bronze Star License Plates, 625 ILCS 5/3-628;

(48) Universal Charitable Organization License Plate, 625 ILCS 5/3-633;

(49) Universal U.S. Veteran License Plates, 625 ILCS 5/3-638;

(50) Special Registration Plates for a President of a Village or Incorporated Town or Mayor, 625 ILCS 5/3-639;

(51) Deceased Police Officer or Firefighter License Plates, 625 ILCS 5/3-641;

(52) Silver Star License Plates, 625 ILCS 5/3-642;

(53) Vietnam Veteran License Plates, 625 ILCS 5/3-645;

(54) World War II Veteran License Plates, 625 ILCS 5/3-647;

(55) West Point Bicentennial License Plates, 625 ILCS 5/3-649;

(56) Army Combat Veteran License Plates, 625 ILCS 5/3-650;

(57) Antique Vehicle, 625 ILCS 5/3-804;

(58) Custom Vehicle Plates, 625 ILCS 5/3-804.1;

(59) Street Rod Plates, 625 ILCS 5/3-804.2;

(60) Gold Star Plates, 625 ILCS 5/3-806.4;

(61) Personalized Plates, 625 ILCS 5/3-806.5.

**ANSWER: Defendant admits that there are specialty license plates in Illinois, as enumerated in paragraph 18, and that some involve collaboration with private groups who are interested in certain issues.**

19. One purpose of the special interest plate program is to produce additional revenue in the millions of dollars for the state and/or defendant White's VSD by making special license plates available for purchase at higher prices than regular license plates. In addition, for those license plates which are privately sponsored (plates 1-27 as listed in the preceding paragraph), the sponsoring organization benefits by (a) sharing in the State's profits from the sale, (b) by the advertising and marketing exposure generated by the appearance on the plate of recognizable logos, pictures, or messages, and (c) providing those with a similar viewpoint an outlet (i.e., their license plate) to express their views on the topic in question.

**ANSWER: Defendant admits that some specialty license plates cost more than regular license plates, and that in the aggregate specialty license plates generate millions of dollars. Defendant admits the remaining allegations of paragraph 19 to the extent some or all of those effects may take place. Defendant has**

insufficient knowledge or information to form a belief as to how much any sponsoring organization may benefit from advertising, or providing those with a similar viewpoint an outlet to express their views on the topic in question.

20. Under the state scheme administered by defendant White, a non-profit organization interested in creating a speciality license plate must find an Illinois legislator to sponsor legislation authorizing the issuance of the specialty plate ("Enabling Legislation"). Such Enabling Legislation generally provides that a portion of proceeds from the purchase of the specialty plates will be deposited in a special fund in the State treasury to be distributed, subject to appropriation by the Illinois General Assembly and approval by the Secretary of State, to support the designated special interest. The only exception is that the Secretary of State may, at his discretion, issue specialty plates for any public or degree-granting, not-for-profit private college or university located in Illinois. (625 ILCS 5/3-629).

**ANSWER:** Defendant admits that the Secretary of State generally requires enabling legislation to create a specialty license plate. Defendant denies he is authorized to approve a specialty plate on his own without enabling legislation. Defendant admits there is legislation authorizing him to issue specialty license plates for Illinois colleges and universities, and deny the characterization that this authority is an "exception."

21. If and only if Enabling Legislation is enacted and the number of requests for the speciality license plate approaches 850 will defendant White allow the organization in question to work on proposed license plate designs in concert with the Communications Department of VSD. Such a submission must generally follow the strictures of 625 ILCS 5/3-412 for the plate's physical parameters. Enabling Legislation generally stipulates that the unique design and color of the speciality plates will ultimately be entirely within the Secretary's discretion. Once approved by defendant White, the speciality plates become available to the public, and consumers typically pay anywhere from $15 and $45 above standard registration fees to obtain a speciality plate from the VSD.

**ANSWER:** Defendant admits the allegations of paragraph 21.

<mark>22.</mark> During the 2001-2002 legislative session, the Illinois General Assembly enacted, and the Governor signed into law, Enabling Legislation for specialty license plates to raise money and awareness for causes including, *inter alia*, education, pet overpopulation, park district youth programs, neuroblastoma research and prevention, and Pan-Hellenic charities. Such Enabling Legislation took between 5 and 12 months from the time of introduction in either body of the Illinois General Assembly to enactment and final approval by the Governor.

**ANSWER:** **Defendant admits that various specialty plates were approved by the General Assembly in 2001-02. Defendant has insufficient knowledge or information to form a belief as to the truth of how long the legislative process may have taken with respect to the passage of each specialty plate statute.**

23. In a good faith attempt to follow the speciality license plate scheme administered by defendant White, in the 2001-02 legislative session Plaintiff Choose Life Illinois requested that then-Illinois State Senator Patrick O'Malley and Illinois State Representative Dan Brady sponsor Enabling Legislation for the purposes of making available to vehicle owners specialty license plates which bear the phrase "Choose Life." These lawmakers agreed and introduced several "Choose Life" speciality license plate bills in the 2001-2002 legislative session, including SB 2426 and HB 3374.

**ANSWER:** **Defendant admits the allegations of paragraph 23.**

24. In the 2003-2004 legislative session plaintiff, Choose Life Illinois, again requested sponsorship of Enabling Legislation for the purpose of making available to vehicle owners specialty license plates which bear the phrase "Choose Life." Illinois State Senator Kirk Dillard and Illinois State Representative Randall Hultgren agreed to sponsor such Enabling Legislation and introduced several "Choose Life" specialty license plate bills in the 2003-2004 legislative session, including SB 1502 and HB 0010. But during this latest session, the General Assembly has taken no further action to approve Enabling Legislation for a specialty license plate bearing the phrase "Choose Life."

**ANSWER:** **Defendant admits Senator Dillard sponsored SB 1502 and Representative Hultgren sponsored HB 0010 in the 93rd General Assembly to**

13

**permit a Choose Life specialty license plate, and admits that those bills have not**

**been enacted into law.**

25.  Only if these bills had been enacted by the Illinois General Assembly, would defendant White have approved the "choose life" specialty license plates and could the proceeds from the DVS's (sic) sale of the "choose life" license plates be distributed (in part) to non-governmental, not-for-profit agencies throughout Illinois which provide counseling and other services to meet the needs of pregnant women who are committed to placing their newborn children for adoption.

**ANSWER:    Defendant admits the allegations of paragraph 25.**

26.  Plaintiff Choose Life Illinois as a non-profit organization manifestly meets the requirements for distribution of funds and would have received funds from the sale of "choose life" specialty plates, if they had been approved. At the time of the bills' introduction, Choose Life Illinois had already received signed petitions requesting "Choose Life" plates from over 25,000 Illinois residents. All the viewpoint-neutral, objective tests for approval of an Illinois specialty license plate were amply met by plaintiffs.

**ANSWER:    Defendant admits Illinois Choose Life is a non-profit organization.**

**Defendant has insufficient knowledge or information to form a belief as to the**

**truth of the remaining allegations of paragraph 26.**

27.  Each and every one of the bills proffered by State Senator O'Malley and State Representative Brady in the 2001-2002 legislative session (SB 2426 and HB 3374), and State Senator Dillard and State Representative Hultgren in the 2003-2004 legislative session (SB 1502 and HB 0010), failed to pass, amidst many expressions of hostility toward the message, "Choose Life," whereas as hereinabove alleged, specialty plates *were* approved for the other advocacy groups and their causes, including pet overpopulation and pan-Hellenic charities.

**ANSWER:    Defendant admits that some specialty plates were approved, and that**

**a Choose Life plate was not, during the 2001-02 and 2003-04 legislative sessions.**

**Defendant has insufficient knowledge or information to form a belief as to the**

14

**truth of the allegation that there were many expressions of hostility toward the message, "Choose Life".**

**CLAIM FOR RELIEF**
*(Violation of Constitutional Free Speech, Equal Protection & Due Process)*

28. Plaintiffs hereby repeat and reallege each and every allegation contained in all preceding paragraphs as if fully set forth herein.

**ANSWER: Defendant incorporates by reference the answers made to paragraphs 1-27.**

29. The entire process for approving special license plates in Illinois consists of a standardless, unguided, discretionary system enforced and executed by defendant White in which defendant White authorizes and allows the issuance of specialty plates bearing particular political message only if the viewpoint expressed is deemed acceptable by a majority of legislators in the General Assembly, as proved by the enactment of Enabling Legislation.

**ANSWER: Defendant admits he will not approve specialty license plates absent the passage of enabling legislation by the General Assembly, and denies the remaining allegations in the first sentence of paragraph 29. Defendant denies that the specialty license plate program violates plaintiffs' First Amendment rights.**

30. This invidious, discriminatory process, as enforced and carried out by defendant White to bar and ban plaintiffs under color of Illinois law from access to the public forum to express their political message in favor of adoption, violates the free speech guarantee found in the First Amendment to the United States Constitution, the Equal Protection guarantee found in the Fourteenth Amendment to the United States Constitution, as well as 42 U.S.C. §1983.

**ANSWER: Defendant denies the allegations of paragraph 30.**

15

31. Plaintiffs request the issuance of a declaratory judgment, deeming his systematic resort to an invidious, discriminatory procedure for limiting access to a public forum for the expression of political viewpoints in the State of Illinois an unconstitutional abridgment of their fundamental rights.

**ANSWER:** **Defendant denies the allegations of paragraph 31.**

32. To repair and remedy this constitutionally defective system for censorship and suppression of political messages, plaintiffs seek issuance of a temporary restraining order, preliminary injunction, and permanent injunction enjoining the defendant, and all those in active concert or participation with him, from awarding, approving, creating, or distributing further any specialty license plates under the current unlawful scheme. Further, they seek equitable relief barring the renewal or extension of previously issued specialty plates, so as to avert the perpetuation of invidious past discrimination in favor of preferred political viewpoints and in derogation of plaintiffs' fundamental rights.

**ANSWER:** **Defendant denies the allegations of paragraph 32.**

33. Plaintiffs have been damaged by these deprivations of their fundamental constitutional rights. But they seek no monetary relief or damages, but only prospective injunctive relief in order to halt, cure and repair the serious legal flaws in the dispensation of Illinois' specialty license plates of which they complain in this lawsuit.

**ANSWER:** **Defendant admits plaintiff seeks no monetary damages. Defendant denies the remaining allegations of paragraph 33.**

WHEREFORE, defendants deny that plaintiffs are entitled to any declaratory or injunctive relief, or any other relief, and pray that the complaint be dismissed with prejudice.

16

## FIRST AFFIRMATIVE DEFENSE

The individual plaintiffs lack standing to sue.

|  | Respectfully submitted, |
|---|---|
| LISA MADIGAN<br>Attorney General of Illinois | *Thomas C. Ioppolo*<br>THOMAS A. IOPPOLO<br>Assistant Attorney General<br>General Law Bureau<br>100 W. Randolph Street, 13th Floor<br>Chicago, Illinois 60601<br>(312) 814-7198 |