IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHOOSE LIFE ILLINOIS, INC. et al., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04 C 4316 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| JESSE WHITE, Secretary of State, State of Illinois, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before this Court is plaintiffs Choose Life Illinois, Inc. et al's ("Plaintiffs") motion for summary judgment against defendant Jesse White ("White" or "Defendant"), and defendant Jesse White's motion for summary judgment against Plaintiffs. For the reasons set forth below, Plaintiffs' motion is granted, and Defendant's motion is denied..

**I.     FACTS**

Choose Life Illinois, Inc. is a not-for-profit corporation, whose purpose is to promote and increase adoption in the state of Illinois. The fifteen individual plaintiffs all reside in Illinois, and are members of Choose Life Illinois. Each individual has committed to purchase one or more sets of the "Choose Life" specialty plates if they were available. Many of the individual plaintiffs have been public advocates of adoption. Many have adopted children of their own or

were themselves adopted. Although the words used on the requested plate "Choose Life" are consistent with the goal of promoting adoption, it is not lost on this court that these words are also closely associated with the "Right to Life/Anti-Abortion" political point of view. Under the reasoning expressed in this opinion, this duality of purpose is not material. This court will assume that this broader purpose motivates the Plaintiff's request.

Defendant is the Secretary of State of the State of Illinois ("Secretary"). Among other duties, White has statutory responsibility for issuing vehicle license plates in Illinois and for administering the specialty license plate programs in Illinois.

With certain exceptions, every motor vehicle registered in Illinois must bear a license plate issued by the Secretary's Vehicle Services Department under the oversight and direction of the Defendant. When vehicle owners request license plates, they may choose a standard plate or a more expensive vanity, personalized, or "specialty" plate. Specialty plates, of which there are approximately 60 designs in existence, bear a medley of various special-interest messages. At least 27 of these plates are sponsored by private organizations. Some examples include, "Be an Organ Donor," "I am Pet Friendly," and "D.A.R.E."[1] The proceeds from specialty plates typically inure in large part to the benefit of various non-profit interest groups, as well as to the State of Illinois to cover or help defray administrative processing costs.

Illinois law vests in the Secretary the authority to observe, administer, and enforce the provisions of the motor vehicle code, including those governing specialty license plates. The Secretary may amend or rescind rules and regulations as may be necessary in the public interest

---

[1] See *Appendix A: List of Illinois Specialty Plates as of October 2005* attached to this opinion.

to carry out the provisions of the code, and is authorized to refuse any application lawfully made to the Secretary if he is "not satisfied of the genuineness, regularity or legality thereof or the truth of any statement contained therein, or for any other reasons, when authorized by law." 625 ILSC 5/2-110; 625 ILSC 5/3-600(a).

In 1988, Illinois began offering specially designed license plates to recipients of the Purple Heart. In 1990, the General Assembly enacted P.A. 84-1207, §1, currently codified at 625 ILCS 5/3-600, which sets forth certain requirements for the issuance of specialty license plates. By its terms, the statute does not require enabling legislation before a new category of specialty license plates may be issued. Under 625 ILCS 5/3-600, the Secretary is barred from issuing a series of specialty plates unless 10,000 applications for plates of that series have been received, except when the Secretary prescribes some other required number of applications. This provision also requires the Secretary to notify all law enforcement official of the design, color and other special features of the plates.

In other provisions of the motor vehicle code, the General Assembly has given specific guidelines as to the substantive content on the plate, including the name of the State, the registration number of the vehicle, the year number for which it was issued, and the phrase "Land of Lincoln." 625 ILCS 5/3-412(b). Illinois law also requires the Secretary "to refuse any license plates bearing a combination of letters or numbers, or both, which creates a potential duplication or, in the opinion of the Secretary, (1) would substantially interfere with plate identification for law enforcement purposes, (2) is misleading, or (3) creates a connotation that is offensive to good taste and decency." 625 ILCS 5/3-405.2.

Defendant has issued a "Fact Sheet" explaining his own policies and practices with respect to the issuance of new categories or types of specialty license plates. Particularly, Defendant requires that the General Assembly must approve specialty plates. Defendant has required that legislation be introduced and approved by both chambers of the General Assembly, and signed into law by the Governor, in order to approve the specialty plates. These requirements for specialty plates are not included in the statute authorizing specialty plates, 625 ILCS 5/3-405.2, and there are no substantive criteria or guidelines for the approval of the specialty license plates by the General Assembly and the Governor.[2] Further, pursuant to 625 ILCS 5/3-600, the Secretary has reduced the requisite number of applications for a new plate from the statutory target of 10,000 to 850.

According to the Defendant's Fact Sheet, once the General Assembly has approved the specialty license plate and requests approach 850 (between 750 and 850), the Communications Department works with some representing the special interest group on a design of the plate. The sample plate is submitted to law enforcement for approval. Once 850 requests are actually received, an initial production order is placed. Notification and applications are sent to all those that submitted commitment forms requesting the plate, and plates are issued when the applications and money are received. It is noted on the Secretary's written policy that any promotional materials relating to a specialty license plate "are the sole responsibility of the sponsoring organization." Dannenberger Dep. 24.

---

[2]The Secretary has not explained why delegating his authority to approve requests for specialty plates protects him from constitutional review of his actions. The Plaintiffs have argued in the alternative that the procedure by which the Secretary delegates the decision to the legislature is "facially" unconstitutional. This court does not have to reach this issue and expresses no opinion thereon.

During the 2001-2002 legislative session, the Illinois General Assembly enacted, and the Governor signed into law, legislation authorizing specialty license plates to raise money and awareness for social causes, such as education, pet overpopulation, and Pan-Hellenic charities. Choose Life Illinois, through Illinois State Senator Patrick O'Malley and Illinois State Representative Dan Brady, introduced several "Choose Life" specialty license plate bills during the 2001-2002 legislative session. The General Assembly took no action. During the 2003-2004 legislative session, Choose Life again introduced several "Choose Life" specialty license plate bills. The General Assembly again took no action, and the specialty plate was de facto denied.

On June 28, 2004, Plaintiffs filed suit in this court. Plaintiffs allege that, having the requisite number of requests, the state's denial of the "Choose Life" plate constituted viewpoint discrimination, in violation of the First and Fourteenth Amendments of the Constitution. Before this court are both Plaintiffs' motion for summary judgment and Defendant's motion for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, along with any affidavits, show there is no genuine issue of fact. Such a showing entitles the moving party to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 720 (7th Cir. 2004). A genuine issue of material fact exists only when a reasonable factfinder could find for the nonmoving party, based on the record as a whole. The court does not weigh the evidence and it does not make credibility determinations. Instead, the court makes

all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). If a party fails to present proof on an essential element of his or her case, then all other facts become necessarily immaterial. *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 509 (7th Cir. 1999).

**III.    ANALYSIS**

Both Plaintiffs and Defendant motion for summary judgment. At issue is whether denying a "Choose Life" message on specialty license plates constitute viewpoint discrimination in violation of the First Amendment. It is undisputed that the state, through the Defendant, did not approve the "Choose Life" specialty plate. It is undisputed that the reason for not approving the plate was because of the politically controversial nature of the message. There is no genuine issue of material fact, such that what remains is a matter of law. In order to succeed in a viewpoint discrimination claim, the message on the specialty license plates must constitute private speech. Plaintiffs motion for summary judgment as a matter of law, arguing that federal courts have found specialty license plate messages to be private speech, requiring strict scrutiny review for viewpoint discrimination. Defendant motions for summary judgment as a matter of law, arguing that federal courts have found specialty license plate messages to be governmental speech, and thus is not protected by the First Amendment.

The First Amendment requires strict scrutiny review for viewpoint restrictions on private speech. To pass this test, the restriction on private speech must be necessary to serve compelling governmental interest by the least restrictive means available. However, if the speech is governmental speech, traditional First Amendment inquiries do not apply. When the

government speaks, it may craft its message as it chooses. *Board of Regents v. Southworth*, 529 U.S. 217 (U.S. 2000). The government may promote its policies and positions either through its own official or through its agents. This authority to "speak" carries with it the authority to select from among various viewpoints those that the government will express as its own. *Rust v. Sullivan*, 500 U.S. 173 (U.S. 1991); *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (U.S. 1995); *Sons of Confederate Veterans v. Vehicles*, 288 F.3d 610, 617 (4th Cir. 2002). Thus, if the speech is governmental speech, the expression and restriction of a particular viewpoint is perfectly acceptable. However, if the speech is private speech, the restriction of a particular viewpoint would trigger First Amendment strict scrutiny review.

Although no clear standard has been enunciated in this Circuit or by the Supreme Court to be used in determining whether a slogan on a specialty license plate is private or governmental speech, other federal courts have considered four factors: (1) the central "purpose" of the program in which the speech occurs; (2) the degree of "editorial control" exercised by the government or private entities over the content of the speech; (3) the identity of the "literal speaker"; and (4) whether the government or the private entity bears the "ultimate responsibility" for the content of the speech. *Sons of Confederate Veterans v. Vehicles*, 288 F.3d 610, 618 (4th Cir. 2002); see also *Wells v. City & County of Denver*, 257 F.3d 1132, 1141 (10th Cir. 2001); *KKK v. Curators of the Univ. of Mo.*, 203 F.3d 1085 (8th Cir. 2000).

**A. Central Purpose**

The central purpose of the specialty plate program appears to be two-fold. Defendant argues that the purpose of the specialty plate program is to publicize messages both the State and private individuals will support and also to generate revenue for the state. Plaintiffs argue that

the purpose is to allow for the private expression of a state-approved message. The Seventh Circuit has not ruled on this issue. However, other federal courts have addressed this issue, and, while this court is not bound by their decisions, it must give substantial weight to their reasoning.

The Fourth Circuit states that the purpose of the specialty plate program "primarily is to produce revenue while allowing, on special plates authorized for private organizations, for the private expression of various views." *Sons of Confederate Veterans v. Vehicles*, 288 F.3d 610, 619 (4th Cir. 2002). In that case, the Commissioner of the Virginia Department of Motor Vehicles denied the Sons of Confederate Veterans a specialty license plate displaying the confederate flag. The Fourth Circuit found that there was viewpoint discrimination in not allowing the confederate flag logo, as the message on the specialty plates was considered private speech.

In *Sons of Confederate Veterans*, as in the present case, the specialty plate was conditioned on the willingness of a threshold number of private persons to pay an extra fee for the plate with the special message. The Fourth Circuit acknowledged that this fee partially went to government revenue, a governmental purpose. The requirement that a minimum number of people would purchase the plate suggests that "the very structure of the program ensures that only specialty plate messages popular enough among private individuals to produce a certain amount of revenue will be expressed." *Id.* However, "if the General Assembly intends to speak, it is curious that it requires the guaranteed collection of a designated amount of money from private persons before its 'speech' is triggered." *Id.* That is, the collection of private funds

indicates that an important purpose of specialty plates is to allow for private expression, as well as to serve governmental revenue purposes.

In the present case, the Defendant requires each private individual to pay an additional fee in order to obtain a specialty license. The requirement of a minimum number of applications and the extra fee charged for the specialty plates leads this court to the same analysis as that employed by the Fourth Circuit. The central purpose of the specialty plate program is both to raise revenue for the state as well as to allow for some private expression. This factor supports the specialty plate program as a medium for both state and private expressions, and that private expression is an important purpose for specialty plates.

**B. Editorial Control**

Defendant argues that editorial control primarily lies with the state, as the Secretary retains discretion over approving or rejecting the plate, citing *Johanns v. Livestock Marketing Association* that when the state has final approval authority over "every word" in the promotional campaign it qualifies as government speech. 125 S.Ct. 2055 (2005). Plaintiffs argue that editorial control primarily lies with the private Illinois Choose Life organization, as the Secretary's discretion is exercised in the design and color of the plate, not the substantive content of the plate.

The Fourth Circuit addressed this issue in *Sons of Confederate Veterans v. Vehicles*, finding that although the state Commissioner was given discretion to approve or reject a given plate design, this discretion was only exercised on one other occasion, suggesting that "little, if any" editorial control was exercised by the Commonwealth over the content of special plates in Virginia. 288 F.3d 610, 621 (4th Cir. 2002). Further, there were no "guidelines regarding the

substantive content of the plates or any indication of reasons, other than failure to comply with size and space restrictions, that a special plate design might be rejected." *Id*. Instead, the Commissioner's discretion was usually reserved for the design and layout of the plate, not the substantive content. *Id.* Similarly, in the present case, Secretary's discretion has been exercised over the design and color of the specialty plates, working with a graphic artist from the Communications Department and law enforcement officials to ensure the designs meet minimum standards of visibility. The Secretary has delegated the approval of the content of specialty plates to the General Assembly, but there are no standards, or indication of reasons, that would guide the decision. There is no evidence that the General Assembly has exercised its discretion in denying a specialty plate bill. Even granting that it has, there is a further point of consideration in *Planned Parenthood of S.C., Inc. v. Rose* that informs this analysis.

In *Planned Parenthood of S.C., Inc. v. Rose*, the Fourth Circuit found that the state exercised complete editorial control over the content of the speech on the Choose Life plate because the idea of a Choose Life plate originated with the State, and the legislature determined that the plate would bear the message "Choose Life." 361 F.3d 786, 793 (4th Cir. 2004). This is distinguishable from *Sons of Confederate Veterans,* where the plate was sought and presented by the plate's private sponsor. If the idea originated with the state, and the state crafted or created the message, then it more likely that the state has control over what is communicated, and how it is presented. However, if the content of the speech originated from a private organization, the private speaker holds much more editorial control in crafting and framing the final message. In the case at hand, the idea and message of the Choose Life plate originated with a private organization, Choose Life Illinois, not the legislature. Unlike *Planned Parenthood of S.C., Inc.*

*v. Rose*, the present case involves a private organization petitioning to express its own message on a specialty plate. Because a private organization created and crafted the "Choose Life" message in this case, it holds more editorial control in accordance with *Planned Parenthood of S.C., Inc. v. Rose*.

Moreover, the Secretary has stated that "any promotional materials [on the specialty plates] are the sole responsibility of the sponsoring organization." That is, the Secretary has specified that some control and responsibility over the substantive content lies with the private organization. The evidence supports the conclusion that the editorial control over the substantive content favors private speech.

### C. Literal Speaker and Ultimate Responsibility

The third and fourth factors ask who is the "literal speaker" and who bears the "ultimate responsibility" for the speech on the specialty license plates. The Supreme Court has held that even messages on standard license plates implicate private speech, as it is at least partly associated with the vehicle owner. *Wooley v. Maynard*, 430 U.S. 705 (U.S. 1977). When the vehicle owner displays a specialty license plate, this association is much stronger:

> Although a specialty license plate, like a standard plate, is state-owned and bears a state-authorized message, the specialty plate gives private individuals the option to identify with, purchase, and display one of the authorized messages. Indeed, no one who sees a specialty license plate imprinted with the phrase "Choose Life" would doubt that the owner of that vehicle holds a pro-life viewpoint. The literal speaker of the Choose Life message on the specialty plate therefore appears to be the vehicle owner, not the State. *Planned Parenthood of S.C., Inc. v. Rose*, 361 F.3d 786, 793-94 (4th Cir. 2004)

This Court agrees with the Fourth Circuit that for a specialty plate, where private individuals have to pay an extra fee for a certain message to be expressed on her private vehicle, and where not all vehicles or license plates contain this message, the "literal speaker" who bears "ultimate responsibility" for the specialized message is the private individual. While the forum may be public, the speech is private. Thus, the third and fourth inquiries favor a private speech designation.

Defendant argues that specialty license plates should be treated as government speech. In support of its position, Defendant cites *Rust v. Sullivan*, where the Supreme Court found that a doctor, working for a state-funded hospital, whose salary came from federal funds, was an individual messenger of government speech. 500 U.S. 173 (1991). When the government pays for the doctor's services, the doctor's speech is considered governmental, and can be controlled by the state regardless of viewpoint. *Rust* is inapposite to the case at hand. In the present case, the private individuals are paying a premium for the specialty plate message to be displayed. That is, the added content of the specialty plate is privately funded by the individual. It would be surprising indeed for the state to require a private individual to create, apply for and pay for what would be considered government speech. It is, in fact, the opposite of *Rust*, where the government determined the message and paid individuals to express it as government speech.

Defendant also cites to *ACLU of Tenn. v. Bredesen*, where the Sixth Circuit found that specialty license plates constituted government speech. 441 F.3d 370 (6th Cir. 2006). Contrary to the Fourth Circuit's holding, the Six Circuit held that "Choose Life" specialty license plates bears a government-crafted message disseminated by private volunteers, where viewpoint neutrality is not required. Key to the Six Circuit's analysis is *Johanns v. Livestock Mktg. Ass'n*,

where the Supreme Court found that where "the government sets the overall message to be communicated and approves every word that it disseminated," the message constitutes government speech. 125 S. Ct. 2055 (U.S. 2005). In *Johanns*, the government promoted marketing slogans such as "Beef. It's What's for Dinner.", subsidized by a government-run "checkoff" fee on all sales or importation of cattle and imported beef products, pursuant to The Beef Promotion and Research Act of 1985. *Id.* In that case, the government passed an act to promote its own interests, created its own marketing campaigns, and was subsidized by its own fund-raising efforts. *Id.* Under these circumstances, the pro-beef speech was considered government speech. *Id.* This is clearly not the case with the present case of specialty license plates. The message in fact was created by the private organization, not the state itself. Further, an extra charge was levied on individuals who would like the specialized message on their license plate. The Sixth Circuit reasoned that this extra charge indicates that there are private "volunteers" who are willing to "pay out of their own pockets for the privilege of putting the government-crafted message on their private property." *ACLU of Tenn. v. Bredesen*, 441 F.3d 370 (6th Cir. 2006). This reasoning is forced. A more compelling reason would be that individuals pay to give expression to their private causes and viewpoints through the specialty plate program. This court respectfully disagrees with the reasons of the Sixth Circuit, and is persuaded by the rationale of the Fourth Circuit. Weighing the four factors discussed above, this court concludes that the privately-crafted and privately-funded message on specialty license plates constitutes private speech.

    **D. Viewpoint Discrimination**

Where the government voluntarily provides a forum for private expression, the government may not discriminate against some speakers because of their viewpoint. If the government is not expressing its own policy, it presumptively violates the First Amendment when it picks and chooses access to the forum on the basis of views expressed by the private speakers. *Ark. Educ. Tv Comm'n v. Forbes*, 523 U.S. 666 (U.S. 1998). Defendant's main argument is that the license plate message is state speech, and thus not subject to First Amendment protection. However, it has been determined that the added message of specialty license plates constitute private speech, and thus the First Amendment is implicated.

Viewpoint discrimination occurs when, in the realm of private speech, government regulation favors one speaker over another. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (U.S. 1995). Further, "the government must abstain from regulating speech when the motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Id*. Where restrictions or regulations of speech discriminate on the basis of the content of speech, there is an "inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information, or manipulate the public debate through coercion rather than persuasion." *Turner Broad. Sys. v. FCC*, 512 U.S. 622 (U.S. 1994). As such, these viewpoint restrictions require strict scrutiny. *Id*.

In analyzing the facts of the present case, the "Choose Life" message certainly represents a viewpoint–the pro-life viewpoint. The state's reason for denying the speech is because that viewpoint is controversial. However, because it is private speech, this reason will not survive strict scrutiny. There are no general guidelines or rules on restricting speech in a viewpoint neutral way that would account for denying "Choose Life" on a specialty license plate. Rather, it

-14-

appears that the state wishes to suppress what it considers a controversial idea, discriminating against a viewpoint with which it does not agree or wish to associate. When a group, such as Choose Life Illinois, has met the numerical and financial requirements of the specialty plate program to deny authorization of the Choose Life plates is to discriminate against those who hold a pro-life viewpoint. This is impermissible.

Defendant argues that if the "Choose Life" message is permissible, than the state would also have to issue Ku Klux Klan or Nazi plates to avoid viewpoint discrimination. The issue of whether there may be any limits on the right to have messages displayed under the Illinois statute does not have to be decided in this case. The fact that speech or viewpoint is unpopular does not exempt it from First Amendment protection. Indeed, the First Amendment protects unpopular, even some hateful speech. The message conveyed by this proposed license plate is subject to First Amendment Protection

Finally, Defendant attempts to distinguish between private and public fora in their argument for summary judgment. However, because we are dealing with viewpoint discrimination in private speech, the forum is inconsequential. Viewpoint discrimination in private speech is presumptively unconstitutional in any forum. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829-30 (U.S. 1995). Thus, this court concludes that denying Illinois Choose Life the specialty license plate based on its message constitutes viewpoint discrimination of private speech, and is prohibited by the First Amendment. With no genuine issue of material fact, Plaintiff is entitled to Judgment.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary is denied; Plaintiffs' motion for summary judgment is granted. Judgment will be entered for the Plaintiffs and against the Defendant. If the Plaintiffs meet the numerical and design requirements for issuance of a specialty plate, the Secretary of State is ordered to issue the "Choose Life" plate. Because this is a case of first impression in this Circuit, this order will be stayed 30 days.

Enter:

/s/David H. Coar

_____

David H. Coar

United States District Judge

Dated: **January 19, 2007**

**APPENDIX A: Illinois Specialty Plates as of October 2005**

(1) Korean War Veteran License Plates, 625 ILCS 5/3-626;

(2) Environmental License Plates, 625 ILCS 5/3-627;

(3) Collegiate License Plates, 625 ILCS 5/3-629;

(4) Prevent Violence License Plates, 625 ILCS 5/3-630;

(5) Sportsmen Series License Plates, 625 ILCS 5/3-631;

(6) Wildlife Prairie Park License Plates, 625 ILCS 5/3-632;

(7) Illinois Firefighters' License Plates, 625 ILCS 5/3-634;

(8) Master Mason Plates, 625 ILCS 5/3-635;

(9) Knights of Columbus Plates, 625 ILCS 5/3-636;

(10) D.A.R.E. License Plates, 625 ILCS 5/3-637;

(11) Illinois and Michigan Canal License Plates, 625 ILCS 5/3-640;

(12) Mammogram License Plates, 625 ILCS 5/3-643;

(13) Police Memorial Committee License Plates, 625 ILCS 5/3-644;

(14) Organ Donor Awareness License Plates, 625 ILCS 5/3-646;

(15) Education License Plates, 625 ILCS 5/3-648;

(16) Hospice License Plates, 625 ILCS 5/3-648;

(17) U.S. Marine Corps License Plates, 625 ILCS 5/3-651;

(18) Chicago and Northeastern Illinois District of Carpenters Plates, 625 ILCS 5/3-652;

(19) Pet Friendly License Plates, 625 ILCS 5/3-653;

(20) Lewis and Clark Bicentennial License Plates, 625 ILCS 5/3-653;

(21) September 11th "America Remembers" License Plates, 625 ILCS 5/3-653;

(22) Illinois Route 66 License Plates, 625 ILCS 5/3-653;

(23) Illinois Public Broadcasting System Stations License Plates, 625 ILCS 5/3-654;

(24) Pan Hellenic License Plates, 625 ILCS 5/3-654;

(25) Park District Youth Program License Plates, 625 ILCS 5/3-654;

(26) Professional Sports Teams License Plates, 625 ILCS 5/3-654;

(27) Stop Neuroblastoma License Plates, 625 ILCS 5/3-654;

(28) Members of the General Assembly, 625 ILCS 5/3-606;

(29) Retired Members of the General Assembly, 625 ILCS 5/3-606.1;

(30) Amateur Radio Operators, 625 ILCS 5/3-607;

(31) Disabled Veterans, 625 ILCS 5/3-609;

(32) Congressional Medal of Honor Recipients, 625 ILCS 5/3-609.1;

(33) Members of Congress, 625 ILCS 5/3-610;

(34) Retired Members of the Illinois Congressional Delegation, 625 ILCS 5/3 610.1;

(35) Repossessors, 625 ILCS 5/3-612;

(36) Special Inaugural License Plates, 625 ILCS 5/3-613;

(37) Honorary Consular License Plates, 625 ILCS 5/3-615;

(38) License Plates for Disabled Individuals, 625 ILCS 5/3-616;

(39) Drivers Education, 625 ILCS 5/3-617;

(40) Charitable Vehicle, 625 ILCS 5/3-618;

(41) Ex-Prisoners of War, 625 ILCS 5/3-620;

(42) Illinois National Guard, 625 ILCS 5/3-621;

(43) Members of Armed Forces Reserves, 625 ILCS 5/3-622;

(44) Purple Heart, 625 ILCS 5/3-623;

(45) Retired Armed Forces, 625 ILCS 5/3-624;

(46) Pearl Harbor Survivor, 625 ILCS 5/3-625;

(47) Bronze Star License Plates, 625 ILCS 5/3-628;

(48) Universal Charitable Organization License Plates, 625 ILCS 5/3-633;

(49) Universal U.S. Veteran License Plates, 625 ILCS 5/3-638;

(50) Special Registration Plates for a President of a Village or Incorporated Town or Mayor, 625 ILCS 5/3-639;

(51) Deceased Police Officer or Firefighter License Plates, 625 ILCS 5/3-641;

(52) Silver Star License Plates, 625 ILCS 5/3-642;

(53) Vietnam Veteran License Plates, 625 ILCS 5/3-645;

(54) World War II Veteran License Plates, 625 ILCS 5/3-647;

(55) West Point Bicentennial License Plates, 625 ILCS 5/3-649;

(56) Army Combat Veteran License Plates, 625 ILCS 5/3-650;

(57) Antique Vehicle Plates, 625 ILCS 5/3-804;

(58) Custom Vehicle Plates, 625 ILCS 5/3-804.1;

(59) Street Rod Plates, 625 ILCS 5/3-804.2;

(60) Gold Star Plates, 625 ILCS 5/3-806.4.